UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-335T |
| | : | |
| JEAN PAUL RICHARD, | : | |
| FRONTENAC COMPANY and | : | |
| H-E PARTS INTERNATIONAL, INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT FRONTENAC COMPANY'S**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant Frontenac Company ("Frontenac") hereby moves this Court for an order dismissing Plaintiff Gero Meyersiek's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support of its motion, Frontenac submits the accompanying memorandum of law and exhibits attached thereto.

FRONTENAC COMPANY

By its Attorneys,

/s/ Stephen M. Prignano
Stephen M. Prignano (#3649)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)
sprignano@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this document has been filed electronically on this 15th day of September, 2006 and is available for viewing and downloading to the ECF registered counsel of record:

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Financial Plaza, Suite 1800
Providence, RI 02903
dan@prentisslaw.com

/s/ Stephen M. Prignano
Stephen M. Prignano

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK, Plaintiff, | : | |
| v. | : | C.A. No. 06-335T |
| JEAN PAUL RICHARD, FRONTENAC COMPANY and H-E PARTS INTERNATIONAL, INC., Defendants. | : | |

**DEFENDANT FRONTENAC COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This memorandum is submitted in support of the motion of Defendant Frontenac Company ("Frontenac") [1] to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. As explained more fully below, this Court should dismiss Plaintiff Gero Meyersiek's ("Plaintiff") claims against Frontenac on the ground that this Court lacks personal jurisdiction over Frontenac, a venture capital firm located in Chicago, Illinois.

Here, personal jurisdiction over Frontenac would not be proper under the Due Process Clause of the United States Constitution because (1) Frontenac's funding of the H-E Parts International, Inc. venture, a Georgia-based company, does not sufficiently evince Frontenac's voluntary, purposeful availment of the laws of the State of Rhode Island so that it might reasonably have anticipated being haled into a Rhode Island court with respect to Plaintiff's claims; and (2) co-Defendant Jean Paul Richard's contacts with the

[1] Although Defendants Jean Paul Richard and H-E Parts International, LLC deny the allegations asserted against them in Plaintiff's Complaint, those claims are not before this Court as part of the instant Motion to Dismiss.

State of Rhode Island may not be attributed to Frontenac for purposes of a personal jurisdiction analysis under the facts of this case.

## FACTUAL BACKGROUND

As indicated in the affidavit of Paul Carbery, one of Frontenac's managing directors, Frontenac is a private equity investment firm located in Chicago, Illinois. (Affidavit of Paul Carbery ("Carbery Aff.") at ¶ 2) (attached hereto as Exhibit A); Complaint ("Compl.") at ¶ 6). Frontenac invests in companies by working with independent business executives to acquire and build small or mid-size companies into larger market leaders by acting as a funding source. (Carbery Aff. at ¶ 3). Frontenac, however, has never been registered, licensed or qualified to do business in Rhode Island (Carbery Aff. at ¶ 4). Frontenac does not transact business in the State of Rhode Island, nor does it own any real estate or other tangible property in Rhode Island. (Id. at ¶¶ 5 – 6). Frontenac does not have, nor has it ever had, bank accounts in Rhode Island (Id. at ¶ 7), nor does it pay taxes to the State of Rhode Island. (Id. at ¶ 8).

**The Parts-Zone Venture.**

In 2003, the Plaintiff contacted Frontenac at its offices in Chicago, Illinois, regarding a proposed business plan for an entity named Parts-Zone, Inc. ("Parts-Zone"), for which he sought private-equity funding. (Affidavit of Jean Paul Richard ("Richard Aff.") at ¶ 4) (attached hereto as Exhibit B). At the time he contacted Frontenac, Plaintiff alleges that he was a resident of East Greenwich, Rhode Island, and an officer and owner of Parts-Zone. (Compl. at ¶ ¶ 9 – 10). Plaintiff alleges that Parts-Zone was a manufacturer of replacement parts for heavy equipment that were no longer in production by its original manufacturer. (Compl. at ¶ 9). Plaintiff also alleges in his Complaint that the purpose of

contacting Frontenac was to have it "invest, and acquire an equity interest in, Parts-Zone, for the purpose of facilitating the acquisition by Parts-Zone of another firm engaged in a business similar to that of Parts-Zone." (Id.).

Following presentation of the Parts-Zone business plan to Frontenac in Chicago, Plaintiff contacted Jean Paul Richard ("Richard") in Atlanta, Georgia, to discuss the business venture. (Richard Aff. at ¶ 4). Frontenac had suggested that Plaintiff speak with Richard regarding his business plan because of Richard's experience in the sale and marketing of industrial and consumer parts. (Id.). At the time of these discussions, Richard was the Chief Executive Officer of ProMach, Inc. ("ProMach"), a company engaged in the manufacture, marketing and service of packaging equipment used by consumer products companies. (Id. at ¶ 3). Although Plaintiff and Richard engaged in discussions regarding the formation of Parts-Zone, Richard had limited involvement due to his level of commitment to Promach. (Id. at ¶ 4). With respect to any interaction he did have with Plaintiff, Richard was neither acting on behalf of Frontenac, nor did he convey to anyone, including Plaintiff, that he had any authority to act on behalf of Frontenac. (Id. at ¶ 6). The Parts-Zone venture was never consummated, and no funding was ever provided by Frontenac. (Id.).

**The H-E Parts International, Inc. Venture.**

Approximately twelve (12) months later, in early 2005, after ProMach had been sold, Richard and Plaintiff met again in Atlanta regarding the Plaintiff's participation in a new venture that Richard was developing. (Richard Aff. at ¶ 7). The Plaintiff had left his previous company, and Richard and the Plaintiff agreed that the Plaintiff could provide Richard with administrative assistance with regard to research in the new venture. (Id.).

Plaintiff and Richard further agreed that eventually Plaintiff could become part of the management team if the venture was ever funded and the proposed management team was accepted. (Id.) The new venture was called H-E Parts International, LLC ("H-E Parts"). (Id.).

Richard also contacted Frontenac regarding a possible investment in H-E Parts. (Id.). The new venture had an entirely different market focus than the Parts-Zone project earlier considered by Frontenac. (Id.). H-E Parts would focus on the creation of a company that would seek to acquire and sell after-market parts for construction and mining machinery. (Carbery Aff. at ¶ 9). At the time he contacted Plaintiff, however, Richard was acting alone and not on behalf of, or in conjunction with, Frontenac. (Richard Aff. at ¶ 7). In fact, Frontenac was unaware of Richard's decision to contact Plaintiff regarding H-E Parts before Richard did so. (Id.).

During the development stage of the H-E Parts venture, Richard obtained administrative and research assistance from Plaintiff. (Id. at ¶ 8). In order to assist Richard with the investigation of the H-E Parts venture, Frontenac allowed Plaintiff and Richard access to certain database materials for research purposes to which Frontenac subscribed. (Carbery Aff. at ¶ 10; Richard Aff. at ¶ 8). Frontenac, however, never sought or requested any assistance from Plaintiff in Rhode Island regarding Richard's proposed venture. (Carbery Aff. at ¶ 10; Richard Aff. at ¶ 8). The investigation and implementation phase of H-E Parts was entirely Richard's undertaking and responsibility, and Frontenac did not direct or exercise control over Richard. (Carbery Aff. at ¶ 11.). Moreover, Frontenac never entered into any discussions or communications with Plaintiff regarding his alleged participation in the H-E Parts venture, nor did Frontenac enter into any

discussions or communications with Plaintiff regarding the alleged terms of his participation in the venture. (Id. at ¶ 13). Frontenac never attended any meetings in Rhode Island regarding the H-E Parts venture. (Id.).

In August 2005, Richard (then accompanied by Plaintiff) presented a business plan for H-E Parts to a group of Frontenac directors in Chicago. (Carbery Aff. at ¶ 12). Frontenac indicated to Richard that it was interested in the business plan for H-E Parts, but that it objected to Plaintiff's participation in the venture because it did not believe that Plaintiff would add to the success of the venture. (Carbery Aff. at ¶ 12; Richard Aff. at ¶ 9). Ultimately, Plaintiff was not offered a position with H-E Parts.

On July 21, 2006, Plaintiff brought this suit against Frontenac, Richard, and H-E Parts, contending that they breached an alleged contract with him regarding alleged promises of employment and an ownership in H-E Parts. As set forth in Mr. Carbery's affidavit, Frontenac denies that it ever had discussions or communications with Plaintiff regarding the alleged terms of his participation in the venture. (Carbery Aff. at ¶ 13).

## ARGUMENT

### I. Standard Applicable To A Motion To Dismiss For Lack of Personal Jurisdiction.

When deciding a motion to dismiss for lack of personal jurisdiction, it is well-settled that the courts within the First Circuit use the *prima facie* standard to determine whether personal jurisdiction is appropriate. See Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 34 (D.R.I. 2003). Under the *prima facie* standard, a plaintiff must "make the showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir.

1992). At all times, the plaintiff has the burden of proving that the court has personal jurisdiction over a given defendant. Brian Jackson & Co., 248 F. Supp. 2d at 34 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). To sustain this burden, the plaintiff may not rely on unsupported allegations in its pleading, but rather "must go beyond the pleadings and make affirmative proof." Boit, 967 F.2d at 675 (emphasis added); Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001) ("[T]he plaintiff is required to bring to light credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts."); Chlebda v. H.E. Fortna & Bros., Inc., 609 F.2d 1022, 1024 (1st Cir. 1979) (believing that jurisdictional allegations must be taken as true is an "elementary mistake"). As shown more fully below, Plaintiff has failed to put forth sufficient evidence to satisfy this standard.

## II. Plaintiff Has Not and Cannot Satisfy The Evidentiary Requirements of The Due Process Clause of the United States Constitution.

In order to establish personal jurisdiction, a plaintiff must show that (1) the forum state has a long-arm statute that purports to grant jurisdiction over the defendant and (2) exercising jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution.[2] Due process requires that a defendant have sufficient contacts with the forum state so than an exercise of long arm jurisdiction will not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This requires a showing that the defendant should reasonably anticipate being haled into court in the forum state. World-Wide Volkswagen

[2] Because Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment, the question in this case is solely whether asserting jurisdiction over Frontenac is consistent with the Due Process Clause.

Corp. v. Woodson, 444 U.S. 286, 297 (1980); see Euro-Pro Operating LLC v. Scutte, C.A. No. 05-11946-DPW, 2006 WL 239802, at *1 (D. Mass. Jan. 31, 2006).

There are two different ways by which a court may acquire personal jurisdiction over a non-resident defendant. Where the defendant has had "continuous and systematic contacts with the forum state," the court has general jurisdiction, and may hear causes of action unrelated to the forum. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 75 (D.R.I. 1995) ("The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive.") If, however, the defendant's contacts with the forum are limited so that they are not sufficient to support the constitutional exercise of general jurisdiction, the court may exercise specific jurisdiction over the defendant only if the plaintiff's causes of action actually arose out of the defendant's contacts with the forum state. Id.

In this case, under the principles of due process, the Court cannot exercise either general or specific personal jurisdiction over Frontenac.

**A. General Jurisdiction Over Frontenac Does Not Exist.**

In considering minimum contacts for the purposes of analyzing a claim of general jurisdiction, "a court properly focuses on the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); see Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). The general jurisdiction standard is "considerably more stringent than the standard for specific jurisdiction." Barry, 909 F. Supp. at 74.

The exercise of general jurisdiction over Frontenac clearly would be incorrect in this case. Here, the Complaint is completely devoid of any allegations that Frontenac has had continuous and systematic contacts with Rhode Island. Although the Plaintiff makes reference in the Complaint to a business relationship between Frontenac, Richard, and the Plaintiff that occurred in 2003 with respect to the acquisition of Parts-Zone, those allegations are insufficient to establish general personal jurisdiction over Frontenac. (Compl. at ¶¶ 9 – 11). Plaintiff alleges that he remained in Rhode Island during the development of the Parts-Zone venture, and that Frontenac and Richard were aware of this fact. (Id. at ¶ 10). The Complaint, however, contains no allegations detailing the contacts that Frontenac had with Rhode Island. Moreover, any contacts with the State of Rhode Island that may have occurred with respect to Parts-Zone were clearly only a result of that isolated presentation made by the Plaintiff (which is not at issue in this case), and do not evidence Frontenac's continuous or systematic contact with the State of Rhode Island. Indeed, Plaintiff concedes that the Parts-Zone relationship ceased in 2004. (Compl. at ¶ 11).

Moreover, Frontenac has not had other contacts with Rhode Island as part of its business that would rise to the level of "extensive and pervasive" contacts. Barry, 909 F. Supp. at 75. As set forth in the affidavit of Mr. Carbery, Frontenac has never been registered, licensed or qualified to do business in Rhode Island. (Carbery Aff. at ¶ 4). Frontenac does not transact business in the State of Rhode Island. (Id. at ¶ 5). Frontenac does not own, nor has it ever owned, real estate or any other tangible or intangible property in Rhode Island. (Id. at ¶ 6). Frontenac does not have, nor has it ever had, bank accounts in Rhode Island (Id. at ¶ 7). Finally, Frontenac pays no taxes to the State of Rhode Island.

(Id. at ¶ 8). Consequently, the assertion of general personal jurisdiction over Frontenac would not be appropriate in this case.

**B. The Court Cannot Exercise Specific Personal Jurisdiction Over Frontenac.**

This Court similarly does not have specific personal jurisdiction over Frontenac. The First Circuit has established a tripartite test for determining whether the exercise of specific personal jurisdiction comports with the constitutionally-mandated minimum contacts requirements:

> (1) The claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities;
>
> (2) The defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the state's courts foreseeable; and
>
> (3) The exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Subsalve USA Corp. v. Watson Mfg., Inc., 392 F. Supp. 2d 221, 222 (D.R.I. 2005). In order for the Court to exercise specific personal jurisdiction, all three factors – relatedness, purposefulness and reasonableness – must be satisfied. Scaraletti v. Swarovski North America Ltd., C.A. No. 06-84T, 2006 WL 2474862, at *3 (D.R.I. Aug. 25, 2006).

**1. Plaintiff Fails To Satisfy The Relatedness Requirement.**

"The [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Brian Jackson Co., 248 F. Supp. at 35. In order to meet the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." United Elec.

Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). The First Circuit recently described the relatedness prong as follows:

> The relatedness requirement is not an open door; it is closely read, and it requires a showing of material connection. This court 'steadfastly reject[s] the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's forum-sate contacts seems attenuated and indirect.' 'Instead, the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case.' A broad 'but-for' argument is generally insufficient . . . . '[D]ue process demands something like a 'proximate cause' standard.'

Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006) (quoting Harlow v. Children's Hosp., 432 F.3d 50, 60 – 61 (1st Cir. 2005)) (internal citations omitted) (emphasis added).

In this case, Frontenac had virtually no contacts with the State of Rhode Island relating to the breach of contract and misrepresentation claims arising from the H-E Parts venture.[3] The Complaint merely alleges that the Plaintiff and Richard engaged in discussions, "some of which included communications with Frontenac," that involved e-mail and telephone calls to and from Plaintiff in Rhode Island. (Compl. at ¶ 20). The substance of any specific conversations between Meyersiek and Frontenac are not disclosed in the Complaint. Indeed, nowhere does the Complaint allege that any specific discussions took place between Frontenac and Plaintiff relating to Plaintiff's ultimate participation in H-E Parts.

Moreover, although the Complaint alleges in conclusory fashion that Frontenac was "aware" that Plaintiff would perform work from his home or office in Rhode Island, the

---

[3] As is clear from the allegations in the Complaint, Plaintiff's breach of contract and misrepresentation claims have no relation to the earlier Parts-Zone venture. Accordingly, the facts and allegations in the Complaint relating to Frontenac's contacts with Rhode Island or with the Plaintiff relating to Parts-Zone should not to be considered as part of a specific jurisdiction analysis. See Valencia-Copete, 792 F.2d at 6 (holding that "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities."

Complaint does not relate any specific communications demonstrating that Frontenac was "aware" of the location that Plaintiff would be performing work, or indeed the nature of that work. Further, the Complaint fails to allege that Frontenac requested Plaintiff to perform work in Rhode Island, or that Frontenac directed this work. (Id. at ¶¶ 21 – 22). Indeed, even if Frontenac was "aware" that Plaintiff performed work in Rhode Island for a proposed business venture that Frontenac had not yet funded, the Complaint does not establish that this "awareness" relates in any way to Plaintiff's allegations of a promise of employment or ownership interest in H-E Parts.

Clearly, the scant mention of any Rhode Island-based contacts with Frontenac in the Complaint, to the extent they even appear, are not material to Plaintiff's claims in this case and are insufficient to meet the relatedness requirement. Nothing in the Complaint alleges that Frontenac had specific contacts with Plaintiff in Rhode Island relating to the alleged contract between Plaintiff, Richard, and Frontenac, wherein Plaintiff was allegedly promised employment and/or an equity interest in the H-E Parts venture. (Carbery Aff. at ¶ 13). Indeed, Frontenac never entered into any discussions or communications with Plaintiff regarding his alleged participation in the H-E Parts venture. (Id.). Moreover, Frontenac never attended any meetings in Rhode Island regarding the H-E Parts venture. (Id.). Accordingly, the Plaintiff has clearly failed to satisfy the "relatedness" requirement for personal jurisdiction over Frontenac.

**2. Frontenac Never Purposefully Availed Itself Of the Privilege of Conducting Activities In Rhode Island.**

"To demonstrate purposeful availment, the plaintiff must proffer evidence that the defendant[s] actually reached out to the plaintiff's state of residence to *create* a relationship – the mere fact that the defendant[s] willingly entered into a tendered

relationship does not carry the day." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) (emphasis in original). The requirement "depends upon the extent to which the defendants voluntarily took action that made it foreseeable they might be required to defend themselves in court in [the forum state]." Id. (citing Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 11 (1st Cir. 2002)).

In this case, the Plaintiff's Complaint is completely devoid of any allegations showing that Frontenac "reached out" to Plaintiff in Rhode Island in a voluntary effort to create a relationship of any kind. During the investigation phase of the H-E Parts venture, Frontenac was nothing more than a potential source for private equity funding that had entertained business proposals by Richard at its offices in Chicago. Frontenac never sought or requested any assistance from Plaintiff in Rhode Island regarding the H-E Parts venture, nor did it direct Plaintiff or Richard in any way prior to the funding of H-E Parts. (Carbery Aff. at ¶¶ 10 – 11). Moreover, Frontenac never attended any meetings in Rhode Island regarding the H-E Parts venture. (Id. at ¶ 13). The mere fact that Plaintiff was present in Rhode Island while doing work with respect to the proposed, un-funded business venture, fails to establish that Frontenac "reached out" to purposefully avail itself of any contacts with Rhode Island. Indeed, it is elementary that "the plaintiff's activities and conduct in the forum cannot serve as the basis for jurisdiction . . . ." Little Brown & Co. v. Bourne, 493 F. Supp. 544 (D. Mass. 1980); Ins. Data Processing, Inc. v. Old Charleston Ins. Cos., C.A. No. 88-4479, 1989 WL 157138, at *8 (E.D. Pa. Dec. 28, 1989) (holding that unilateral activity of plaintiff from its forum state cannot alone satisfy the requirement of contact with the forum state or that defendant purposefully availed itself of the laws of the forum state). The purpose of the relatedness requirement is to measure Frontenac's

contacts with Rhode Island, not the Plaintiff's jurisdictional contacts. Given the lack of allegations that Frontenac actually "reached out" to Rhode Island, Frontenac submits that the Complaint fails to demonstrate that Frontenac "purposefully availed" itself of the benefits and protections of Rhode Island law.

**3. The Gestalt Factors Do Not Call For The Exercise Of Personal Jurisdiction Over Frontenac In This Case.**

To determine the reasonableness of exercising personal jurisdiction over Frontenac in this case, the Court also must consider the Gestalt factors. See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). A brief review of these factors reveals that they do not call for the exercise of personal jurisdiction over Frontenac, particularly given the Plaintiff's failure to satisfy the "relatedness" and "purposeful availment" elements.

**a. Frontenac's Burden of Defending in Rhode Island.**

Frontenac is a private equity business located in Chicago, which does not engage in business in the State of Rhode Island. (Carbery Aff. at ¶ 5). Moreover, as described in the affidavits of Paul Carbery and Jean Paul Richard, Frontenac had limited contact with Plaintiff during the development of H-E Parts – none of which involved a purposeful availment of the laws of Rhode Island. Frontenac's witnesses and documents are all located in Chicago, and therefore the burden on Frontenac in defending plaintiff's claims in Rhode Island would be increased. This factor, therefore, militates in favor of dismissal.

**b. Rhode Island's Interest In Adjudicating The Dispute.**

Although Rhode Island ordinarily has an interest in providing its citizens with a forum to litigate its disputes, that interest alone is not enough to justify the exercise of jurisdiction over an out-of-state defendant that has otherwise not purposefully availed itself

of the right to do business here. Frontenac was introduced to the H-E Parts venture by an Atlanta, Georgia businessman and ultimately agreed to fund an Atlanta, Georgia-based company. The business presentations to Frontenac concerning H-E Parts, moreover, took place in Chicago, Illinois. Other than the voluntary physical presence of the Plaintiff in this state, Rhode Island has virtually no factual nexus to this litigation. This factor, therefore, also militates in favor of dismissal.

**c. Plaintiff's Interest In Obtaining Convenient and Effective Relief.**

The Plaintiff would not be unduly inconvenienced by litigating his causes of action outside of Rhode Island. Despite the fact that he is a Rhode Island resident, Plaintiff alleges that he traveled to Atlanta to meet with Richard regarding the H-E Parts venture. Moreover, during the course of his dealings with Frontenac, Plaintiff's only in-person meeting with Frontenac was at a presentation in Chicago. After alleging that he engaged in complex negotiations with parties in multiple states around the United States, Plaintiff cannot now claim that it would be inconvenient for him to pursue his claims in a court in one of those states.

**d. The Effective Administration Of Justice Will Be Served In This Case Regardless Of The Forum.**

The effective administration of justice with respect to his litigation will be achieved regardless of the forum in which it is litigated. The causes of action plead in the Complaint are based on common law causes of action that can easily be interpreted and applied by a court in any jurisdiction, the effective administration of justice does not require that this litigation proceed in Rhode Island. At best, this factor is neutral with respect to the Gestalt considerations.

**e. The Judicial System's Interests And The States' Common Interests Do Not Require The Exercise Of Personal Jurisdiction Over Frontenac.**

The judicial system's and the states' interests in obtaining the most effective resolution of this litigation does not require that this case be litigated in Rhode Island. All of the defendants are located out-of-state and much of the conduct giving rise to the claims in this case took place outside of Rhode Island. Moreover, it is unclear whether Rhode Island, Georgia, or Illinois common law will apply to this case, making it impossible for one state to claim a superior interest over another state at this point in the litigation. Consequently, neither the judicial system's nor the states' interests require the exercise of personal jurisdiction over Frontenac in Rhode Island.

In sum, the Gestalt factors clearly support the dismissal of this case for lack of personal jurisdiction.

**III. Richard Was Not Acting As Frontenac's Agent, And Therefore His Contacts With Rhode Island Cannot Be Imputed To Frontenac For Purposes of Exercising Personal Jurisdiction.**

Because Richard was not acting on behalf of Frontenac with respect to any of the alleged actions giving rise to the Plaintiff's claims, Richard's contacts with Rhode Island cannot be imputed to Frontenac for purposes of a specific personal jurisdiction analysis.

The leading case in the First Circuit regarding imputed contacts for purposes of personal jurisdiction is Daynard v. Ness. Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42 (1st Cir. 2002). In Daynard, the plaintiff, a Massachusetts resident, brought suit in the District of Massachusetts for breach of contract against two non-Massachusetts law firms, referred to generally in the Daynard opinion as the "Motley defendants" and the "Scruggs defendants", in an attempt to recover fees generated by a tobacco litigation.

Before the district court, the Scruggs defendants moved to dismiss for lack of personal jurisdiction, but the Motley defendants did not challenge the assertion of jurisdiction over them. The district court ruled that, even though the Motley defendants had sufficient contacts with Massachusetts to establish personal jurisdiction over them, the Motley defendants' contacts could not be attributed to the Scruggs defendants because there was no agency relationship between the two law firms.

On appeal, the First Circuit reversed the district court, holding that the relationship between the Motley and Scruggs defendants was sufficient to attribute the Motley defendants' contacts with the forum state to the Scruggs defendants. Id. at 56-57. The court reasoned that "[e]ven if the parties were not joint venturers, they held themselves out to Daynard to be part of a joint venture or other agency relationship and are subject, for personal jurisdiction purposes, to the doctrine of estoppel." Id. at 57. In reaching this conclusion, the Court relied on numerous evidentiary proffers by the plaintiff to support the joint relationship between the Motley and Scruggs defendants. First, the plaintiff asserted that the conduct of the two firms supported the finding of a joint venture. Specifically, that during an initial meeting in Massachusetts, a partner with the Motley defendants represented that he was acting for both firms when he hired the plaintiff. Id. Second, the plaintiff provided documentary evidence of a joint venture agreement relating to the tobacco litigation that contained the names of both the Motley defendants and the Scruggs defendants. Id. Third, the plaintiff provided both firms with legal advice, including advice to members of the Scruggs defendants that were physically present in Massachusetts. Fourth, the plaintiff provided as evidence references in a well-known treatise on tobacco litigation that described the Motley defendants and the Scruggs

defendants as joint venturers. Id. at 58. Fifth, as additional evidence of public perception that the two firms were joint venturers, there was evidence that other lawyers wrote checks made payable to "Ness Motley/Scruggs." Sixth, the plaintiff produced a letter written by the Motley defendants to the Attorney General of Hawaii indicating that the Motley firm worked jointly with the Scruggs defendants. Id.

The facts of this case, however, are markedly different from those of Daynard. In this case, there is no evidence that Richard or Frontenac ever represented to either the Plaintiff, or the public at large, that Richard was acting on behalf of Frontenac with respect to H-E Parts. Frontenac, as a private equity investor, was simply one of many funding options available to Richard with respect to H-E Parts, provided that Richard developed a business plan that was of interest to Frontenac. As attested to by Paul Carbery, Richard was never obligated to obtain his funding from Frontenac, and could have sought funding from a different private equity firm at any time. (Carbery Aff. at ¶ 14). Similarly, Richard also attested to the fact that he never represented to Plaintiff that he had authority to make any decisions or agreements on behalf of Frontenac. (Richard Aff. at ¶ 10).

Moreover, unlike the interaction of the defendants in Daynard, there is no objective evidence that Frontenac and Richard actually entered into a joint venture or agency relationship of any kind. Indeed, Richard attested that the investigation and development phase of H-E Parts was entirely Richard's undertaking and responsibility, and that prior to the funding of H-E Parts, Frontenac did not direct or exercise control over Richard in any way. (Id. at ¶ 11). Importantly, in this case, Frontenac cannot be said to have ratified any conduct that Richard may have engaged in that was outside the scope of his authority,

given that Frontenac had no contact or communication with Plaintiff regarding his alleged participation in the development of H-E Parts. (Carbery Aff. at ¶ 13).

Daynard made clear that the relevant question, for purposes of imputing jurisdictional contacts, is not whether the plaintiff understood the defendants to be acting as joint venturers, but rather whether the plaintiff had a basis for this belief "grounded in the [defendants'] own conduct or conduct undertaken with their consent." 290 F.3d at 57. Beyond the conclusory allegations of the Complaint, the Plaintiff has alleged no facts to support the allegation that he believed Frontenac and Richard were acting as one with respect to the H-E Parts venture. Indeed, the Complaint utterly fails to attribute any specific conduct or representation by Frontenac that Richard was acting as its agent, or that Richard had authority to promise Plaintiff employment with, or an ownership interest in, H-E Parts. Because the Plaintiff has failed to make this showing, Richard's contacts cannot be imputed to Frontenac for the purpose of exercising personal jurisdiction over Frontenac in this case.

## CONCLUSION

For the foregoing reasons, Defendant Frontenac Company's Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

FRONTENAC COMPANY

By its Attorneys,

/s/ Stephen M. Prignano
Stephen M. Prignano (#3649)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)
sprignano@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this document has been filed electronically on this 15th day of September, 2006 and is available for viewing and downloading to the ECF registered counsel of record:

R. Daniel Prentiss, Esq.
R. Daniel Prentiss, P.C.
One Financial Plaza, Suite 1800
Providence, RI 02903
dan@prentisslaw.com

/s/ Stephen M. Prignano
Stephen M. Prignano