# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK<br><br>Plaintiff,<br><br>v.<br><br>JEAN PAUL RICHARD, FRONTENAC COMPANY and H-E PARTS INTERNATIONAL, INC.<br><br>Defendants. | ) | C.A. No. 06-335-T |

**AFFIDAVIT OF JEAN PAUL RICHARD**

I, Jean Paul Richard, hereby declare and state as follows:

1. I am the Chief Executive Officer of H-E Parts International, Inc. ("H-E Parts"). Unless otherwise indicated, I have personal knowledge of the matters set forth herein and would be competent to testify thereto.

2. H-E Parts is a global distributor of equipment, components and parts to the mining and construction industries. H-E Parts is incorporated under the laws of the state of Georgia, with its principal place of business located in Atlanta, Georgia.

3. I have spent my career in the area of industrial products and equipment businesses. Prior to serving in my current position with H-E Parts, I was the President and CEO of ProMach, Inc. ("ProMach"), a company engaged in the manufacture, marketing and service of packaging equipment used by consumer products companies.

4. I met Gero Meyersiek ("Meyersiek") in the fall of 2003 when he visited me in Atlanta, Georgia. At that time, I was still the President and CEO of ProMach. Meyersiek indicated to me that he had made a presentation to Frontenac Company ("Company") in

Chicago, Illinois, in conjunction with his efforts to obtain funding for a business venture named "Parts-Zone." Meyersiek further indicated that Frontenac suggested that Meyersiek speak with me regarding his business plan because of my experience in the sale and marketing of industrial and consumer parts.

5. For a short period of time, I engaged in discussions with Meyersiek regarding the formation of the Parts-Zone business plan. However, due to my level of commitment at that time to Promach, I had limited involvement in Meyersiek's efforts to develop the Parts-Zone venture. In the end Meyersiek and his partner decided to seek other potential funding sources than Frontenac.

6. During the period of time that I conferred with Meyersiek regarding the Parts-Zone venture, I was neither acting on behalf of Frontenac as its agent, nor did I convey to anyone, including Meyersiek, that I had authority to act on behalf of Frontenac.

7. Approximately twelve months later, in early 2005, after ProMach had been sold, Meyersiek and I met again in Atlanta regarding his possible participation in a new venture in the heavy equipment parts area that I was in the process of developing. Meyersiek had left his previous company, Parts Zone, at the time and we agreed that he could provide me with certain administrative assistance with regard to my research in the venture and eventually become part of the management team if this venture was ever funded and the proposed management team was accepted. The new venture would be known as H-E Parts. I also contacted Frontenac regarding a possible investment in H-E Parts. H-E Parts would have an entirely different market focus than the Parts Zone project earlier considered by Frontenac. At the time I contacted Meyersiek, I was acting alone and not on behalf of, or in conjunction with, Frontenac. Indeed, I did not even

inform Frontenac of my decision to contact Meyersiek regarding the possible venture before doing so.

8. During my investigation of the new venture, Meyersiek provided certain administrative assistance to me in researching possible business acquisitions for H-E Parts. In order to assist with my investigation in the H-E Parts venture, Frontenac allowed Meyersiek and me access to certain database materials for research purposes to which Frontenac subscribed. To my knowledge, Frontenac never sought or requested any assistance from Meyersiek regarding the venture.

9. In August 2005, I presented a business plan for H-E Parts to Frontenac at its offices in Chicago, Illinois. Meyersiek accompanied me on this visit for the presentation of the business plan. Following the presentation, Frontenac informed me that it was interested in the business plan for H-E Parts. Frontenac indicated, however, that it objected to Meyersiek's participation because it did not feel that he would significantly add to the success of the venture.

10. At no time prior to the acceptance of the business plan, including acceptance of the management team and funding by a private equity firm, did I have any authority to enter into any form of agreement concerning employment or an ownership interest in H-E Parts on behalf of anyone, nor did I ever suggest to Meyersiek that I had any such authority.

I declare under the penalty of perjury that the foregoing is true and correct, this 13th day of September, 2006.

Jean Paul Richard

STATE OF GEORGIA )
COUNTY OF Cobb )

Subscribed to and sworn to before me this 13th day of September, 2006.

Notary Public

Notary Public, Cobb County, Georgia
My Commission Expires April 20, 2009