UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK,<br><br>Plaintiff,<br><br>v.<br><br>JEAN PAUL RICHARD,<br>H-E PARTS INTERNATIONAL, INC.,<br>FRONTENAC COMPANY,<br>FRONTENAC COMPANY VIII, LLC,<br>FRONTENAC VIII PARTNERS, L.P.,<br>FRONTENAC VIII LIMITED<br>PARTNERSHIP<br><br>Defendants. | ) | C.A. No. 06-335-T |

**AMENDED[1] MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants Frontenac Company, Frontenac Company VIII, LLC, Frontenac VIII Partners, L.P., and Frontenac VIII Limited Partnership (collectively, the "Frontenac Entities") hereby move this Court for an order dismissing the Amended Complaint of Plaintiff Gero Meyersiek ("Plaintiff") for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support of their Amended Motion to Dismiss, the Frontenac Entities rely on the accompanying Memorandum of Law, as well as the original motion to dismiss, memorandum of law with exhibits (Document # 11), and reply memorandum (Document # 31) previously filed by Frontenac Company.

[1] This Motion amends the motion to dismiss filed by Frontenac Company on September 15, 2006 (Document #11), to seek the dismissal of Frontenac Company VIII, LLC, Frontenac VIII Partners, L.P., and Frontenac VIII Limited Partnership, which were added as defendants by Plaintiff's Amended Complaint.

FRONTENAC COMPANY, FRONTENAC COMPANY VIII, LLC, FRONTENAC VIII PARTNERS, L.P., and FRONTENAC VIII LIMITED PARTNERSHIP

By their Attorneys,

/s/ Stephen M. Prignano
/s/ Raymond M. Ripple

Stephen M. Prignano (#3649)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)
sprignano@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on April 3rd, 2007, a copy of the following was served by first-class mail, postage prepaid, on the following counsel of record:

R. Daniel Prentiss, Esq.
Seth Yurdin, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Plaza, Suite 380
Providence, RI 02903
dan@prentisslaw.com
syurdin@prentisslaw.com

/s/ Stephen M. Prignano
Stephen M. Prignano

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-335-T |
| | ) | |
| JEAN PAUL RICHARD, | ) | |
| H-E PARTS INTERNATIONAL, INC., | ) | |
| FRONTENAC COMPANY, | ) | |
| FRONTENAC COMPANY VIII, LLC, | ) | |
| FRONTENAC VIII PARTNERS, L.P., | ) | |
| FRONTENAC VIII LIMITED | ) | |
| PARTNERSHIP | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FRONTENAC COMPANY, FRONTENAC COMPANY VIII, LLC, FRONTENAC VIII PARTNERS, L.P., AND FRONTENAC VIII LIMITED PARTNERSHIP'S AMENDED[2] MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendants Frontenac Company, Frontenac Company VIII, LLC, Frontenac VIII Partners, L.P., and Frontenac VIII Limited Partnership (collectively, the "Frontenac Entities") submit this memorandum of law in support of their Amended Motion to Dismiss the Amended Complaint of Plaintiff Gero Meyersiek ("Plaintiff") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. As will be shown below, and as previously set forth in Frontenac Company's original motion to dismiss, this Court does not have personal jurisdiction over the Frontenac Entities.

[2] This Motion amends the motion to dismiss filed by Frontenac Company on September 15, 2006 (Document #11), to seek the dismissal of Frontenac Company VIII, LLC, Frontenac VIII Partners, L.P., and Frontenac VIII Limited Partnership, which were added as defendants by Plaintiff's Amended Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges generally in his Amended Complaint that the Frontenac Entities, Defendant Jean Paul Richard ("Richard"), and H-E Parts International, Inc. ("H-E Parts") entered into a contractual relationship whereby Plaintiff agreed to assist Richard with the identification of potential target businesses for acquisition by a new business entity.[3] (Amended Complaint ("Am. Compl.") at ¶ 19.) The new business entity, H-E Parts, would be funded by a private equity investment by a venture capital firm. (Am. Compl. at ¶ 21.) The Amended Complaint alleges that the private equity investment was ultimately provided by Frontenac Company. (Id. at ¶ 33.) In exchange for his services, Plaintiff alleges that he was promised a four percent equity interest in H-E Parts. (Am. Compl. at ¶ 24.) In addition, Plaintiff alleges that Richard and Frontenac promised that, upon the execution of a letter of intent for acquisition of an equity interest in a target business, Plaintiff would become a paid officer of H-E Parts. (Id.)

On September 15, 2006, Frontenac Company moved to dismiss the Plaintiff's original Complaint on the grounds that (1) Frontenac Company's funding of the H-E Parts venture, a Georgia-based company, does not sufficiently evince Frontenac Company's voluntary, purposeful availment of the laws of the State of Rhode Island; and (2) Richard's contacts with the State of Rhode Island may not be attributed to Frontenac Company because there was no agency or other relationship between Richard and Frontenac Company.

[3] With the exception of adding a claim for unjust enrichment, and naming the Frontenac Entities as defendants, the proposed Amended Complaint is materially identical to the Complaint. Therefore, in support of their Amended Motion to Dismiss, the Frontenac Entities incorporate and rely on the factual background and legal authority, as well as the September 13, 2006 Affidavits of Paul Carbery ("Carbery Aff.") and J.P. Richard ("Richard Aff."), attached to Frontenac Company's Memorandum of Law in Support of its First Motion to Dismiss. Moreover, the Frontenac Entities further rely on the Supplemental Affidavit of Paul Carbery ("Supp. Carbery Aff."), which is attached hereto as Exhibit A. The Supp. Carbery Aff. provides that any factual references to Frontenac Company in the Carbery Aff. apply equally to the Frontenac Entities.

After conducting jurisdictional discovery, Plaintiff amended his Complaint to add the Frontenac Entities as defendants. Defendants now seek dismissal of the Amended Complaint as to all of the Frontenac Entities on the ground that personal jurisdiction is lacking.

## ARGUMENT

### A. When Determining Whether Plaintiff Has Made A *Prima Facie* Showing of Personal Jurisdiction, It Is Appropriate To Consider Uncontradicted Facts Supplied By The Defendants.

When deciding a motion to dismiss for lack of personal jurisdiction, the courts within the First Circuit use the *prima facie* standard to determine whether the exercise of personal jurisdiction is appropriate. See Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997); Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 34 (D.R.I. 2003). At all times, the plaintiff has the burden of proving that the court has personal jurisdiction over the defendants. Brian Jackson & Co., 248 F. Supp. 2d at 34 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). In meeting this burden, a plaintiff must provide credible evidence and "cannot rest upon mere averments, but must adduce competent evidence of specific facts". Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001); see Mass. School of Law at Andover, Inc. v. Am. Bar Assoc., 142 F.3d 26, 34 (1st Cir. 1998) (noting that "the law does not require us struthiously to credit conclusory allegations or draw farfetched inferences"). Moreover, in determining whether sufficient facts exist to support the exercise of personal jurisdiction, the Court should consider uncontradicted facts put forward by the defendants. See Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002); Mass. School of Law, 142 F.3d at 34 (holding that, in ruling on a motion to dismiss for lack of personal jurisdiction, the court is to "add to the mix facts put forward by the defendants, to the extent that

they are uncontradicted"). As shown more fully below, Plaintiff has failed to put forth sufficient evidence to establish personal jurisdiction over the Frontenac Entities.

### B. Recent Deposition Testimony Indicates That The Original Defendant, Frontenac Company, Had No Involvement In The Funding of H-E Parts.

During jurisdictional discovery, former Frontenac Company partners David Katz ("Katz") and Laura Pearl ("Pearl") testified that Frontenac Company, the original defendant, had no involvement in the funding of H-E Parts. Both Katz and Pearl testified that any contact they had with Richard relating to the H-E Parts venture occurred while they were acting for Frontenac Company VIII, LLC, and not Frontenac Company. Katz testified as follows:

> Q: When you sign as a managing director here, do you know of which entity you were signing as a managing director? There are three entities that are listed above your signature.
>
> A: I believe I was signing as a managing director of Frontenac Company VIII, LLC, which is the general partner of Frontenac VIII Partners, Limited Partnership, which is the general partner of Frontenac VIII Limited Partnership.
>
> Q: And is it your belief that that is the capacity in which you interacted with J.P. [Richard] throughout the development of this H-E Parts enterprise?
>
> A: I believe that was the capacity in which I interacted with J.P. in all of my interactions with him up to and until and for some period of time after July 11th of 2005.

(Deposition of David Katz at 67: 6 – 24 – 68:1) (Relevant pages of the Katz deposition transcript are attached hereto as Exhibit B).

Similarly, Pearl testified that she was not working on behalf of Frontenac Company during her interactions with Richard relating to the H-E Parts venture:

> Q: And that is the entity, Frontenac Company VIII, LLC, which was really the Frontenac entity that had an interest in the ultimate development of this business?

A: Correct.

(Deposition of Laura Pearl at 15: 8 – 12).

Moreover, Pearl further testified that Frontenac Company is an entity that exists solely for administrative purposes, and is not an entity that engages in investing activities. (Id. at 14: 18 – 20). Accordingly, at the time that Richard was interacting with Katz and Pearl regarding the H-E Parts venture, they were not even working for, or on behalf of, Frontenac Company. Plaintiff therefore cannot establish specific personal jurisdiction over the original defendant, Frontenac Company, because Frontenac Company was not involved with the H-E Parts venture. Accordingly, Plaintiff's claims against Frontenac Company should be dismissed.

**C. As With Frontenac Company, This Court Lacks Personal Jurisdiction Over the Frontenac Entities.**

The arguments asserted by Frontenac Company in its original motion to dismiss apply with equal force to the attempted assertion of personal jurisdiction over the new defendants added to this case – the Frontenac Entities. In order to establish his burden of proving personal jurisdiction over the Frontenac Entities, the Plaintiff "must go beyond the pleadings and make affirmative proof" that the exercise of personal jurisdiction is warranted. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). Plaintiff fails to satisfy this burden, and fails to allege any additional facts in the Amended Complaint to support the exercise of personal jurisdiction over the Frontenac Entities. Accordingly, this Court lacks personal jurisdiction over the Frontenac Entities for the same reasons it lacks personal jurisdiction over those defendants.

**1. General Jurisdiction Does Not Exist Over the Frontenac Entities.**

In considering minimum contacts for the purposes of analyzing a claim of general jurisdiction, "a court properly focuses on the relationship among the defendant, the forum, and

the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984); see Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005).

As with Frontenac Company, the exercise of general personal jurisdiction over the Frontenac Entities would be improper. The Frontenac Entities have no continuous or systematic contacts with the State of Rhode Island. (Supp. Carbery Aff. at ¶ 2.) Accordingly, this Court cannot exercise general jurisdiction over the Frontenac Entities.

**2. Specific Jurisdiction Does Not Exist Over the Frontenac Entities.**

To establish specific personal jurisdiction, the Plaintiff's claims against the Frontenac Entities must directly arise out of, or relate to, their activities in Rhode Island, and must represent a purposeful availment of the benefits and protections of Rhode Island's laws. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

To support the exercise of specific personal jurisdiction, Plaintiff cites to virtually no factual allegations that indicate the Frontenac Entities have sufficient minimum contacts with the State of Rhode Island with respect to the H-E Parts venture. The Frontenac Entities never sought or requested any assistance from Plaintiff in Rhode Island regarding the H-E Parts venture. (Carbery Aff. ¶¶ 10 – 11; Supp. Carbery Aff. at ¶ 3). Accordingly, this Court lacks specific personal jurisdiction over the Frontenac Entities because there is no evidence that it ever "reached out" to Plaintiff in Rhode Island, or otherwise purposefully availed itself of Rhode Island's laws.

**D. Plaintiff Cannot Rely on Any Contacts That Richard May Have Had With Rhode Island in Order to Establish Personal Jurisdiction.**

The Plaintiff's primary basis for the exercise of personal jurisdiction over the Frontenac Entities is an imputed contacts analysis. Plaintiff alleges that Richard's contacts may be imputed to the Frontenac Entities on the ground that Richard was acting at the behest of the Frontenac

Entities in his dealings with Plaintiff with regard to the H-E Parts venture. Because Richard did not act as an agent of the Frontenac Entities, however, there is no basis for imputing Richard's jurisdictional contacts to those defendants.

### 1. Richard's Contacts With Rhode Island Cannot Be Imputed To The Frontenac Entities.

Plaintiff's attempt to establish personal jurisdiction over the Frontenac Entities through an imputed contacts analysis misses the mark. In order to impute contacts that Richard may have had with Rhode Island relating to the H-E Parts venture to the Frontenac Entities, Plaintiff must provide sufficient evidence that the Frontenac Entities and Richard were acting as joint venturers, or that Richard was somehow acting at the behest of the Frontenac Entities. Daynard v. Ness. Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 57 (1st Cir. 2002). Not only does Plaintiff's Complaint fail to set forth any facts to support this argument, the depositions conducted during jurisdictional discovery substantiate precisely the opposite conclusion.

With respect to the venture that resulted in the formation of H-E Parts, Katz repeatedly testified that at all times Richard and the Frontenac Entities were investigating the H-E Parts opportunity separately, on their own "paths." Richard was attempting to assemble a business model for H-E Parts that would be attractive to prospective venture capital firms, like the Frontenac Entities, while the Frontenac Entities were investigating the merits of the H-E Parts opportunity to make a funding decision:

> Q: Was J.P. Richard free to investigate
> [the H-E Parts] opportunity and present it to Frontenac as
> he deemed fit; it that fair?
>
> A: Yes, he was free to do that.
> He was free to go down other paths if he felt
> that was more appropriate.
>
> We communicated with one another, given

> our long history of working together and our sense of mutual trust, we communicated regularly while he worked on his path and while we worked on our path. But we did not control him or his actions or decisions in any way, shape, or form.

(Katz Dep. at 82: 18 – 83: 7).

Accordingly, while the parties proceeded on their own "paths," the Frontenac Entities never exercised control over Richard or his individual decisions that contributed to the formation of H-E Parts. Indeed, Katz testified that, as late as December 2005, Richard and Katz discussed the real possibility that Richard would seek venture capital funding from an entity other than Frontenac.

> Q: The ultimate decision as to an offer price, the terms of an acquisition of Dom-Ex, was that a decision in which J.P. and Frontenac had equal rights to control?
>
> A: No, I don't think it was equal or unequal. I think J.P. had to come to the decision for himself on whether or not he wanted to try to close a deal with us [] with Frontenac as a financing partner or someone else as a financing partner.
>
> . . . .
>
> If he had decided yes and we had decided no, he likely would have gone out and tried to find another equity partner to help him finance this transaction.

(Id. at 77: 19 – 78: 4, 78: 11 - 14).

This testimony is further underscored by Paul Carbery, who attested in his Supplemental Affidavit that Richard was at no time acting on behalf of Frontenac Company VIII, LLC, or any of the other Frontenac Entities. (Supp. Carbery Aff. at ¶ 3.) Until the H-E Parts venture was funded, both Richard and the Frontenac Entities were operating independently. Indeed, Richard

testified that the Frontenac Entities' interest in funding the H-E Parts venture was unresolved even as late as August 2005. Richard testified: "I mean, I was on my own knowing that the whole thing might just, you know, fall apart. My next step was to go find another private equity group if that didn't work." (Deposition Richard at 76: 7 – 10). Accordingly, the testimony establishes that the investigation and development phase of H-E Parts was entirely Richard's undertaking and responsibility, and that prior to the funding of H-E Parts, the Frontenac Entities did not direct or exercise control over Richard in any way. (Richard Aff. at ¶ 11; Supp. Aff. Carbery at ¶ 3.)

On this record, the Frontenac Entities submit that it would be inappropriate to impute Richard's contacts with the State of Rhode Island to them for purposes of personal jurisdiction. In order to impute jurisdictional contacts, the First Circuit in Daynard specifically relied upon the numerous evidentiary proffers unearthed during discovery to support the existence of a joint venture amongst the defendants. Indeed, in Daynard, some of the same evidence showing a joint venture relationship also established jurisdictional contacts with the plaintiff himself. Thus, a partner with the Motley defendants in that case actually represented that he was working for the Scruggs defendants when he hired the plaintiff. 290 F.3d at 56.

Other evidence in that case – not present here – was held by the Court to demonstrate a joint venture relationship between the defendants. Thus, the plaintiff in Daynard cited a "joint venture agreement" produced during discovery that contained the names of both the Scruggs and Motley defendants. Id. at 57. Plaintiff had also produced evidence that he had conversations with both firms in which he was promised a share of the fees of both firms. Id. at 58. The Court also noted the publication of a popular book as evidence that the two law firms were engaged in a well-documented joint venture. Id. Additionally, documents were produced during

jurisdictional discovery which indicated that checks had been written to "Ness Motley/Scruggs." Finally, in Daynard, there was evidence of direct assurances to plaintiff by the Motley firm which were held to be ratifications of the alleged promises made by the Scruggs firm. Id. at 59.

Unlike the joint venture relationship between the Motley and Scruggs defendants, this case does not present the same indicia of joint activity that would be sufficient to attribute jurisdictional contacts to the Frontenac Entities. Here, as noted above, the record is replete with evidence of the parties' arms-length dealings with regard to the exploratory phase of H-E Parts. Moreover, there is no evidence, as there was in Daynard, that the Frontenac Entities and Richard shared any financial benefit or risk during the exploratory phase. In fact, Richard testified that prior to February 15, 2006, he bore 100% of the risk of the venture, and never received any compensation from the Frontenac Entities. Additionally, unlike the Scruggs and Motley defendants who were together actively engaged in the tobacco litigation, both Katz and Richard testified on numerous occasions that the parties were proceeding on their own paths, each researching their portion of the opportunity – Richard in an attempt to obtain funding and establish a management team, while the Frontenac Entities were determining whether to make a funding decision. Further, unlike Daynard, none of the alleged "joint venture" evidence here relates specifically to the alleged agreement formed with the Plaintiff, there is no evidence of joint venture communications by the Frontenac Entities to the Plaintiff, nor is there any evidence of communications by the Frontenac Entities to the Plaintiff ratifying Richard's alleged promises. Therefore, because the factual record in this case is markedly different from the facts in Daynard, this Court should not permit the Plaintiff to impute Richard's contacts with Rhode Island to the Frontenac Entities for purposes of a personal jurisdiction analysis.

**2. <u>There is no Evidence in the Record That Richard Ever Interacted With Frontenac VIII Partners, L.P. or Frontenac VII Limited Partnership</u>.**

Plaintiff's attempt to impute Richard's contacts with Rhode Island to Frontenac VIII Partners, L.P. and Frontenac VIII Limited Partnership also fails because there is no evidence whatsoever in the factual record that Richard ever interacted with anyone acting on behalf of those entities. During their depositions, both Katz and Pearl specifically testified that they were acting only on behalf of <u>Frontenac Company VIII, LLC</u> when they interacted with Richard relating to the H-E Parts venture. (Katz Dep. at 67: 6 – 24, 68:1); (Pearl Dep. at 15: 8 – 12). Neither Katz nor Pearl ever testified that they were acting on behalf of Frontenac VIII Partners, L.P. or Frontenac VIII Limited Partnership with regard to the H-E Parts venture. Nonetheless, the Plaintiff's Amended Complaint alleges that Katz and Pearl were acting as agents for <u>all</u> of the Frontenac Entities with respect to the H-E Parts venture. (Amended Compl. at ¶ 12). This allegation, however, is contrary to the testimony of Katz and Pearl and is not supported by any other facts put forward by the Plaintiff that would establish a joint venture or agency relationship among Richard and Frontenac VIII Partners, L.P. or Frontenac VIII Limited Partnership.

**E. <u>Even If This Court Were To Find There Is A Sufficient Basis To Impute Richard's Contacts To The Frontenac Entities, It Would Be Unreasonable For This Court To Exercise Personal Jurisdiction</u>.**

The Frontenac Entities submit that, even if this Court were to determine that there is a sufficient basis to attribute some of Richard's contacts with the State of Rhode Island to them, this Court should decline to exercise personal jurisdiction because it would be unreasonable under the facts developed during jurisdictional discovery. <u>See</u> <u>Daynard</u>, 290 F.3d at 60 (holding that a court, even after finding a basis to impute contacts for purposes of a minimum contacts analysis, must still proceed with the remaining constitutional analysis). In order for this Court to

exercise personal jurisdiction over the Frontenac Entities, the exercise of jurisdiction must be reasonable. Id. at 62.

Here, it would be unreasonable for this Court to exercise personal jurisdiction over the Frontenac Entities given the substantial evidence of arms-length dealings between the Frontenac Entities and Richard during the exploratory phase of the H-E Parts venture. As noted above, the Frontenac Entities are private equity companies based in Chicago, Illinois, which have absolutely no contacts of their own with the State of Rhode Island. (Carbery Aff. at ¶¶ 4 – 8). In order for a private equity firm to evaluate proposals for funding brought before it, the firm must -- of necessity -- interact with the party who applies for funding. If this Court were to conclude that a lender's relationship with an applicant is sufficient to establish personal jurisdiction over the Frontenac Entities, then arguably a plaintiff would be able to sue a private equity firm or other lender in virtually any forum where the applicant for funding has contact. This would occur, moreover, despite the fact that the private equity firm has no ability to control the activities of the applicant, or indeed has any contractual relationship with the applicant whatsoever. Under the facts of this case, given the substantial evidence of arms-length dealing with Richard as part of the normal due diligence process of a private equity firm, the Frontenac Entities submit that the exercise of personal jurisdiction based on imputed contacts would be unreasonable.

## CONCLUSION

For the foregoing reasons, and those reasons set forth in Frontenac Company's Memorandum of Law in Support of its First Motion to Dismiss, Plaintiff's Amended Complaint should be dismissed with respect to Frontenac Company, Frontenac Company VIII, LLC, Frontenac VIII Partners, L.P., and Frontenac VIII Limited Partnership.

FRONTENAC COMPANY, FRONTENAC COMPANY VIII, LLC, FRONTENAC VIII PARTNERS, L.P., and FRONTENAC VIII LIMITED PARTNERSHIP

By their Attorneys,

/s/ Stephen M. Prignano
/s/ Raymond M. Ripple______________________

Stephen M. Prignano (#3649)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)
sprignano@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on April 3rd, 2007, a copy of the following was served by first-class mail, postage prepaid, on the following counsel of record:

R. Daniel Prentiss, Esq.
Seth Yurdin, Esq.
R. Daniel Prentiss, P.C.
One Turks Head Plaza, Suite 380
Providence, RI 02903
dan@prentisslaw.com
syurdin@prentisslaw.com

/s/ Stephen M. Prignano________
Stephen M. Prignano