UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK | : | |
| | : | |
| v. | : | C. A. No. 06-335T |
| | : | |
| JEAN PAUL RICHARD, FRONTENAC COMPANY and H-E PARTS, INTERNATIONAL, INC. | : | |

**AFFIDAVIT OF GERO MEYERSIEK**

Gero Meyersiek, on oath, makes affidavit and testifies as follows:

1. I am Gero Meyersiek. I reside at 1285 Waterford Drive, East Greenwich, Rhode Island. I am the plaintiff in the above-entitled action. I give this affidavit on personal knowledge.

2. I am a career business executive. I have been employed in executive positions at the General Electric Company and Textron, Inc., among other employers. In 2003, while I was an executive, senior manager, and owner of a business known as "Parts-Zone," I undertook to seek equity funding for the acquisition of additional businesses that were in the same or similar business as Parts-Zone, which was the manufacture and distribution of replacement parts for heavy equipment that was no longer in production by its original manufacturer.

3. In my search for equity investors, I made a telephone call to Jim Crawford, with whom I had worked when I was a consultant with

McKinsey Company, and whom I knew to be a managing director of a substantial private equity investment firm based on Chicago, Illinois, known as Frontenac Company. Mr. Crawford referred me to another Frontenac managing partner, David Katz, as being the person at Frontenac who would deal with a proposal such as mine. I and another Parts-Zone executive then traveled to Chicago to meet with Mr. Katz and explain our plans. Mr. Katz told us that a Mr. J. P. Richard, who was currently running a Frontenac company called Promach, was Frontenac's person in our industry. He described Richard as what Frontenac referred to as one of its "CEO1st" executives, and stated that our plan would have to pass muster with him for Frontenac to be interested in it.

4. After the meeting with Mr. Katz, I reviewed the Frontenac Company web site. I observed on the site that Mr. Richard was identified as a Frontenac "CEO1st" executive.

5. We then made arrangements to meet with Mr. Richard at his offices in Atlanta, Georgia. We presented our plan to Mr. Richard, and followed up with a few email communications. The project did not progress further, because of Mr. Richard's time commitments in running the business of Promach. We concluded our communications with Mr. Richard stating to me that he would like

to explore our ideas further when he had additional time to devote to it.

6. In December, 2004, Mr. Richard called me, to inform me that Frontenac had sold the company of which he had been the chief executive, and that he was ready to start a new venture. He specifically mentioned a project for the acquisition of an enterprise engaged in the replacement parts industry called MinnPar, which at that time had been acquired by Parts-Zone. I expressed interest in presenting his and Frontenac's possible involvement to the investors in MinnPar, and we agreed to talk further.

7. In January, 2005, Mr. Richard and I again spoke by telephone about forming a new venture. In that discussion, he confirmed what I believe was at least implicit in our December, 2004 conversation, which is that his new venture would be another Frontenac investment. He stated that he was still working in the transition of Promach to its new owners, but expected that process to be completed by March, 2005. We agreed that I would travel to Atlanta for further conversations.

8. I met with Mr. Richard in Atlanta in February, 2005. At that meeting we engaged in detailed discussions and planning regarding the new business venture. We agreed that my role would be primarily strategic marketing, including the identification and

research of potential target companies, analysis of the market and the potential target companies' place in the market, and preparation of appropriate documents, such as investor presentations, non-disclosure agreements and letters of intent. I explained that I would be able to perform all of my functions from my office in Rhode Island, by telephone, internet, and mail. Mr. Richard agreed. We then discussed my compensation for the work that I would be contributing to the venture. Mr. Richard stated that I would receive a four percent equity share in the enterprise, which he said was standard in the industry. He also stated that I would begin to draw a salary of $175,000 per year, and be eligible for a performance bonus for up to an additional $175,000. At that meeting, he stated that the salary and bonus would begin after the business plan had been approved by Frontenac. I agreed to these terms. Mr. Richard then stated that he would have to "run this by David Katz," at Frontenac, and get his approval of my compensation package.

9. Within a few days of my return to Rhode Island from Atlanta, Mr. Richard called me to say that David Katz "was OK with" my involvement and my compensation. I thereupon began essentially a full time occupation with performing my work as described in the preceding paragraph on our venture. I remained so engaged

through August of 2005. In August, after Frontenac and Richard had signed a letter of intent with a target company that I had identified and analyzed, Richard informed me that Frontenac had decided that it did not need my services for the business.

10. I relied on Mr. Richard's affiliation with Frontenac in agreeing to enter into a contract for involvement in the business venture with Mr. Richard. When I was searching for equity funding on behalf of Parts-Zone, I went to Frontenac, not Mr. Richard. Frontenac introduced me to Mr. Richard as its "CEO1st" representative with experience in industries similar to Parts-Zone. Mr. Richard clearly stated to me that his new business venture would be a Frontenac investment, and that my participation had to be approved by Frontenac. I would not have agreed to become involved with Mr. Richard if he had not been representing Frontenac.

Gero Meyersiek

Subscribed and sworn to before me, this 1st day of February, 2007, by Gero Meyersiek, to me known, and known by me to be the person executing the foregoing affidavit.

Notary Public 07-08-2009