UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK<br><br>Plaintiff,<br><br>v.<br><br>JEAN PAUL RICHARD, FRONTENAC COMPANY, FRONTENAC COMPANY VIII, LLC, FRONTENAC VIII PARTNERS, LP, FRONTENAC VIII LIMITED PARTNERSHIP and H-E PARTS INTERNATIONAL, LLC<br><br>Defendants. | ) | C.A. No. 06-335-T |

**REPLY MEMORANDUM IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION**

Plaintiff's opposition ignores key distinctions between the present case and the First Circuit's decision in Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42 (1st Cir. 2002). Unlike Daynard, Frontenac Company (a) had no contacts of its own with Rhode Island, (b) the contract out of which Plaintiff's cause of action arose was allegedly formed in Atlanta, Georgia, (c) Frontenac did not promise Meyersiek compensation, or reach into Rhode Island for that purpose, (d) there is no evidence that Frontenac was aware that Meyersiek would be performing services in Rhode Island, or that Frontenac had accepted services that it knew had been performed in Rhode Island, and (e) there is no evidence that Meyersiek communicated regularly with Frontenac following the alleged Atlanta contract. Here, exercising personal jurisdiction over Frontenac based solely on imputed Rhode Island contacts that are unrelated to the formation of the contract, and which do not evidence voluntary action on the part of Frontenac to purposefully avail itself of the Rhode Island forum, would result in an unwarranted expansion of personal jurisdiction. Accordingly, Frontenac's motion to dismiss should be

granted.

## I. Plaintiff Has Not Shown That Frontenac Purposefully Availed Itself of the Benefits and Protections of Rhode Island Law.

Plaintiff's analysis of the purposeful availment requirement is limited to the actions of defendant Richard alone. "Richard's injection of himself into Rhode Island to secure the plaintiff's services is sufficient to establish his purposeful availment of the privileges of doing business in Rhode Island to make him subject to her jurisdiction." (Plaintiff's Memorandum at 19) (emphasis added). Plaintiff, however, does not point to any voluntary actions of Frontenac itself showing that it reached into Rhode Island. Frontenac submits that more is required – voluntary action on the part of Frontenac vis-à-vis Rhode Island is indispensable to the jurisdictional analysis.

In Daynard, the First Circuit stressed that "'the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.'" Daynard, 290 F.3d at 61 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)). "The cornerstones upon which the concept of purposeful availment rest[s] are voluntariness and foreseeability." Id. (internal quotes omitted). Some of Scruggs' voluntary actions noted by the court included telephone and fax communications between Scruggs and Daynard in Massachusetts, and conversations with Daynard in which Scruggs "agreed to pay him a share of the fees as compensation for work performed in Massachusetts." Id. at 61-62. The First Circuit also noted that, according to Plaintiffs' allegations, "Scruggs firm members came to Boston to receive his advice, although Scruggs denies this." Id. at 62. The court also noted that, according to Plaintiff's allegations, the defendant "contemplated that the plaintiff would render services in

the forum." Id.

No such similar evidence has been presented concerning any actions of Frontenac. Plaintiff's opposition points to no communications by Frontenac agreeing to pay Plaintiff for work performed in Rhode Island. Unlike Daynard, Plaintiff has also pointed to no evidence that Frontenac was aware that "Meyersiek would perform essentially all of his services under the agreement from his home and office in Rhode Island." Id. Neither the February 17, 2005 e-mail from Richard, the deposition testimony, or plaintiff's own affidavit establish that Frontenac was aware that Meyersiek would be performing services from Rhode Island. And while Plaintiff claims that Richard called Plaintiff in Rhode Island in December 2004, there is no evidence that Frontenac was aware of this call or was aware that Meyersiek was in Rhode Island at the time.[1] Finally, Plaintiff's opposition points to no evidence that Meyersiek regularly communicated with or provided advice to Frontenac from Rhode Island. Here, unlike Daynard, the evidence of Frontenac's purposeful availment with respect to Rhode Island is non-existent.

Moreover, the case of Brian Jackson & Co. v. Eximias Pharmaceutical Corp., 248 F. Supp. 2d 31 (D.R.I. 2003), discussed in Plaintiff's memorandum, actually supports Frontenac's position. In Eximias, Judge Smith correctly stated that "the purposeful availment test focuses on the deliberateness of the defendant's contacts." 248 F. Supp. 2d at 35 (emphasis added). Like Daynard, the contract at issue in Eximias was negotiated and formed in the forum state. Further, like Daynard, the court noted: "Plaintiff here presents considerable evidence that Eximias' representatives frequently corresponded with him in Rhode Island by e-mail, facsimile transmission, and telephone. Some of these communications were initiated by Jackson; others

[1] Plaintiff attempts to shore up these facts by submitting a supplemental affidavit in support of his opposition. Frontenac contests the Plaintiff's efforts to submit new facts that never were presented to the Magistrate Judge for consideration. See, e.g., Aguilar v. E-Z Supply Corp., C.A. No. 06-6790, 2008 WL 905224, at *1 (Mar. 31, 2008 E.D.N.Y. 2008) (noting that district courts "will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been presented to the magistrate judge in the first instance").

were initiated by Eximias; all were voluntary." Id. at 36. There was also evidence that the defendant encouraged the plaintiff to perform work in Rhode Island to save costs. Id. According to the court, "Eximias might well have anticipated that encouraging Jackson to perform his contractual duties in Rhode Island substantially increased its ties to Rhode Island." Id. In short, there was abundant evidence of voluntary and knowing conduct by the defendant in Eximias that made it foreseeable that it could be haled into court in Rhode Island. In this case, however, even if Richard's Rhode Island contacts are imputed to Frontenac, there is simply no evidence of voluntary conduct on the part of Frontenac "to inject itself into the local economy as a market participant" such that suit in Rhode Island would be foreseeable to Frontenac. In these circumstances, the element of purposeful availment is entirely lacking.

## II. Plaintiff's Evidence Does Not Satisfy the Relatedness Requirement.

Plaintiff's opposition acknowledges that "[t]he actual negotiation that led to the agreement took place in Atlanta . . . ." (Plaintiff's Memorandum at 18). This fact further removes this case from both Daynard and Eximias. In Daynard, the court explained:

> It is clear that Daynard's breach of contract claim "arise[s] out of, or relate[s] to," the Scruggs defendants' Massachusetts activities. Foster-Miller, 46 F.3d at 144. Daynard's lawsuit is based on his claim that the defendants owe him money for his work pursuant to an agreement initiated by the defendants while physically present in Massachusetts and performed, in part, in Massachusetts. This relationship contemplated ongoing interaction between Daynard, in Massachusetts, and the defendants, in Mississippi and South Carolina. Daynard's suit arises out of these Massachusetts activities, which were instrumental to the formation of the disputed oral contract.

290 F.3d at 61 (emphasis added).

In Eximias, the court also noted that the agreement was formed, at least from plaintiff's point of view, in Rhode Island. 248 F. Supp. 2d at 35. In this case, however, none of the Rhode Island contacts imputed to Frontenac "were instrumental to the formation of the disputed oral

contract." Daynard, 290 F.3d at 61. Here, the disputed oral contract was not formed in Rhode Island, but in Atlanta. All of the critical negotiations relating to the formation of the alleged agreement took place outside of Rhode Island. Therefore, it cannot be said that Plaintiff's suit arises out of activities that were instrumental to the formation of the agreement. For these reasons, the Rhode Island contacts imputed to Frontenac do not satisfy the relatedness requirement.

## III. There Was No Evidence of a Joint Venture or Agency Relationship at the Time of the Alleged Atlanta Agreement.

Plaintiff's opposition acknowledges that "Frontenac is correct that the determinative time as of which the relationship must exist is the time of formation of the contract." (Plaintiff's Memorandum at 11.) In Daynard, the prosecution of tobacco litigation by Scruggs and Motley had been underway for some years at the time of the Massachusetts agreement. 290 F.3d at 46. Here, the evidence relied upon by Plaintiff to show a joint venture post-dates the alleged formation of the Atlanta agreement, and does not show that a joint venture existed in February 2005. Instead, the evidence shows that Richard was still familiarizing Frontenac with the H-E Parts concept at that time, and that a Daynard-type relationship had not yet developed. For these reasons, it was error to impute jurisdictional contacts to Frontenac.

FRONTENAC COMPANY
By their Attorneys,

/s/ Stephen M. Prignano
/s/ Raymond M. Ripple

Stephen M. Prignano (#3649)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
sprignano@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 3, 2008.

/s/ Raymond M. Ripple
Raymond M. Ripple